GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
By: TALIA KRAEMER
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2822
E-mail: talia.kraemer@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> WALTER SCHIK, <br><br> Defendant. | No. 20 Civ. 2211 <br><br> **COMPLAINT** |

Plaintiff the United States of America (the "United States"), by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, brings this civil action against Defendant Walter Schik ("Schik") under the Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.*, and alleges upon information and belief as follows:

### INTRODUCTION

1.      Congress enacted the BSA to facilitate and monitor compliance with currency regulation and tax laws. As part of this function, the BSA combats tax evasion and abusive tax schemes using offshore bank accounts, particularly in jurisdictions with bank secrecy laws that may hinder the enforcement of U.S. law.

2.      In 2007, Schik had a financial interest in and/or signature or other authority over certain numbered Swiss bank accounts at Union Bank of Switzerland ("UBS"). Schik willfully failed to disclose his UBS accounts to U.S. authorities by filing the required Report of Foreign

Bank and Financial Accounts known as the "FBAR."  As a result of this willful violation of the BSA, the Internal Revenue Service ("IRS") has assessed penalties against Schik totaling nearly nine million dollars.

3.      The United States brings this suit to collect the unpaid civil penalties IRS assessed against Schik for his willful failure to report his financial interests in foreign financial accounts in calendar year 2007, as required by 31 U.S.C. § 5314 and its implementing regulations.

## JURISDICTION AND VENUE

4.      The United States brings this suit pursuant to 31 U.S.C. §§ 3711(g)(4)(C) and 5321(b)(2), at the direction of the Attorney General of the United States and at the request of, and with the authorization of, the Commissioner of the IRS, a delegate of the Secretary of the Treasury of the United States.

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 because it arises under a federal statute and the United States is the plaintiff.

6.      Venue is proper in this district under 28 U.S.C. § 1391(b), because Schik resides in this district and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## REGULATORY BACKGROUND

7.      The BSA authorizes the U.S. Department of the Treasury ("Treasury") to require United States persons to report certain transactions with foreign financial agencies.  *See* 31 U.S.C. § 5314.  Under the statute's implementing regulations at the relevant time, "[e]ach person subject to the jurisdiction of the United States . . . having a financial interest in, or signature or

other authority over, a bank, securities, or other financial account in a foreign country," was required to report that interest for each calendar year in which such relationship existed.  31 C.F.R. § 103.24(a) (2008).[1]

8.      To fulfill this requirement, a U.S. person was required to file a Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts, known as an FBAR, by June 30 "of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year."  31 C.F.R. § 103.27(c) (2008).  Form TD F 90-22.1 required the U.S. person to report the maximum value of each foreign financial account during the relevant calendar year.

9.      The BSA authorizes the imposition of civil penalties on taxpayers who willfully fail to comply with the reporting requirements of Section 5314.  *See* 31 U.S.C. § 5321(a)(5). Specifically, Section 5321(a)(5)(C) permits the Secretary of the Treasury to impose a penalty of the greater of $100,000 or 50 percent of the balance in the account at the time of the violation on willful violators of this requirement.

10.      Any penalty imposed under 31 U.S.C. § 5321(a)(5)(C), if not timely paid, will accrue interest and further penalties pursuant to 31 U.S.C. § 3717.

## FACTUAL BACKGROUND

11.      Schik was a U.S. citizen and resident during calendar year 2007.  Schik filed U.S. tax returns for tax years including 2007.

12.      During calendar year 2007, Schik lived at 162 West 54th Street, Apt. 9B, New York, New York.

---

[1] The regulations implementing 31 U.S.C. § 5314 have been amended since the period at issue and recodified at 31 C.F.R. pt. 1010.

**A.  The UBS Account Ending in 8030**[2]

13.    In November 2000, Schik signed a UBS "Opening of an account / custody account" form for an account at UBS with master number XXX-XX8030 (the "8030 Account"), identifying himself as the account holder.  The account was opened as a "Numbered account," rather than a "Name account."  The form indicated that correspondence for the account should be mailed to a person named David Beck at an address in Zurich, Switzerland.

14.    Also in November 2000, Schik signed multiple additional UBS forms for the 8030 Account.  He signed a UBS "Verification of the beneficial owner's identity" form, identifying himself as the account's contracting partner and beneficial owner.  He signed a UBS "Power of attorney for the management of assets for external asset managers" form, identifying himself as principal and David Beck as "attorney."  He signed UBS "General power of attorney" forms, granting power of attorney to Schik's wife Marianne, as well as to Schik's sons Robert Schik, Joseph Schik, and Benjamin Schik.

15.    Schik directed UBS not to invest the funds in this account in U.S. securities, and signed a form stating: "I am aware of the new tax regulations.  To this end, I declare that I expressly agree that my account shall be frozen for all new investments in US securities as from 1 November 2000."

16.    In July 2006, Schik signed a UBS "Power of attorney for the management of assets for financial intermediaries" form for the 8030 Account, which identified himself as principal.

---

[2] Pursuant to Federal Rule of Civil Procedure 5.2(a)(4), all but the last four digits of financial account numbers herein are redacted on the public record.  The Government will provide an unredacted version of this complaint to the Court and to Schik.

**B.  The UBS Account ending in 6451**

17.     On November 6, 2000, an entity named Tikva Consulting S.A. (formerly Tikva

Financial Consulting, S.A.) ("Tikva") was chartered in Panama.

18.     In November 2000, David Beck signed a UBS "Opening of an account / custody

account (firms, corporations and other institutions)" form for an account at UBS with master

number XXX-XX6451 (the "6451 Account"), identifying Tikva as the account holder.  The

account was opened as a "Name account."  The form indicated that correspondence for the

account should be mailed to Mr. Beck in Zurich.

19.     Also in November 2000, UBS "Verification of the beneficial owner's identity"

forms were signed by David Beck and a representative of Tikva, identifying Schik as the

beneficial owner of the 6451 Account.  That same month, Schik signed a UBS "Power of

attorney for the management of assets" form for the 6451 Account that identified Tikva as

principal and Schik as "attorney."

20.     In November 2004 and January 2005, Tikva representatives signed UBS

"Authorized signatories" forms for the 6451 Account, identifying Schik as an authorized

signatory.

**C.  Schik's Tax Filings**

21.     Schik did not timely file FBARs for multiple calendar years, including 2003

through 2008.

22.     In early 2009, it was publicly announced that UBS had entered into a deferred

prosecution agreement with the Department of Justice, on charges of conspiring to defraud the

United States by impeding the IRS.  As part of the deferred prosecution agreement, UBS agreed

to provide the U.S. government with the identities of certain U.S. customers and to exit the

business of providing banking services to U.S. clients with undeclared accounts. *See* Department of Justice, Office of Public Affairs, *UBS Enters into Deferred Prosecution Agreement* (Feb. 18, 2009), *available at* https://www.justice.gov/opa/pr/ubs-enters-deferred-prosecution-agreement.

23.     In or around June 2009, Schik filed an individual income tax return, Form 1040, jointly with his wife Marianne Schik, for tax year 2007. Schedule B of the return answered "no" to a question asking whether, in 2007, the Schiks had an interest in or signature or other authority over any foreign financial accounts.

24.     At some point during 2009, UBS notified Schik that it was closing his accounts.

25.     At some point during 2009, Schik learned through newspaper reports about the agreement between UBS and the Department of Justice.

26.     On or about September 25, 2009, Schik submitted a voluntary disclosure to the IRS regarding his foreign accounts.

27.     In or around October 2009, Schik filed an individual income tax return, jointly with his wife, for tax year 2008. Schedule B of the 2008 return disclosed that the Schiks had an interest in one or more foreign accounts in Switzerland during that year, but did not identify those accounts.

28.     In October 2009, Schik belatedly filed an FBAR for calendar year 2008, reporting holdings in foreign financial accounts.

29.     By letter dated February 25, 2010, IRS declined Schik's voluntary disclosure "due to timeliness and/or completeness."

30.     In December 2010, Schik belatedly filed FBARs for certain calendar years, including 2007, reporting holdings in foreign financial accounts. The FBAR for 2007 reported both the 8030 Account and 6451 Account. The 2007 FBAR reported a maximum balance of

$1,594,398 in the 8030 Account, and a maximum balance of $15,649,573 in the 6451 Account. Schik also filed an updated FBAR for 2008.

31.      Thereafter, Schik, jointly with his wife, submitted an amended tax return for 2007.  Schedule B of the Schiks' amended return for 2007 answered "yes" to the question asking whether, in 2007, they had an interest in or signature or other authority over any foreign financial accounts.

**D.  Schik's Failure to Comply with FBAR Filing Requirements**

32.      During calendar year 2007, Schik had a financial interest in, and/or signature or other authority over, the 8030 Account.

33.      The 8030 Account was a bank, securities, or other financial account in a foreign country.

34.      The balance of the 8030 Account in calendar year 2007 was greater than $10,000.

35.      The due date for filing an FBAR for calendar year 2007 was June 30, 2008.

36.      Schik failed to file an FBAR to report his interest in the 8030 Account for calendar year 2007 by the deadline of June 30, 2008.  Accordingly, Schik failed to timely disclose the 8030 Account for calendar year 2007, as required by 31 U.S.C. § 5314.

37.      Schik's failure to file an FBAR for the 8030 Account for calendar year 2007 was willful within the meaning of 31 U.S.C. § 5321(a)(5).

38.      During calendar year 2007, Schik had a financial interest in, and/or signature or other authority over, the 6451 Account.

39.      The 6451 Account was a bank, securities, or other financial account in a foreign country.

40.      The balance of the 6451 Account in calendar year 2007 was greater than $10,000.

41.     The due date for filing an FBAR for calendar year 2007 was June 30, 2008.

42.     Schik failed to file an FBAR to report his interest in the 6451 Account for calendar year 2007 by the deadline of June 30, 2008.  Accordingly, Schik failed to timely disclose the 6451 Account for calendar year 2007, as required by 31 U.S.C. § 5314.

43.     Schik's failure to file an FBAR for the 6451 Account for calendar year 2007 was willful within the meaning of 31 U.S.C. § 5321(a)(5).

### E.  Examination and Assessment of Civil Penalties

44.     On several occasions between March 2014 and July 2017, Schik's representative agreed in writing to extend the time within which IRS may assess an FBAR penalty for calendar year 2007, ultimately extending the deadline for assessment until December 31, 2018.

45.     On March 14, 2016, IRS sent Schik a letter advising that the IRS proposed to assess a penalty against him for his willful failure to comply with FBAR filing requirements for calendar year 2007.

46.     On March 12, 2018, IRS assessed penalties totaling $8,822,806 (the "FBAR Penalties") against Schik for his willful failure to comply with the FBAR filing requirements with respect to the 8030 and 6451 Accounts for 2007.

47.     On March 13, 2018, IRS sent Schik a demand for payment of the FBAR Penalties.  Schik has not paid the assessed amount.

48.     Since the date on which the IRS assessed the FBAR Penalties, interest and additional penalties have accrued, and continue to accrue, pursuant to 31 U.S.C. § 3717.

### CLAIM FOR RELIEF
### Judgment for Civil Penalties, 31 U.S.C. § 5321(a)(5)

49.     The United States repeats and re-alleges the allegations in Paragraphs 1-48 herein.

50.     By this action, the United States seeks to collect the FBAR Penalties that the IRS assessed against Schik on March 12, 2018, plus interest and additional penalties that continue to accrue as provided by law.

51.     Schik owes the United States the FBAR Penalties totaling $8,822,806, plus associated penalties and interest pursuant to 31 U.S.C. § 3717, which continue to accrue, less any amounts collected.

52.     The United States may bring suit to recover the FBAR Penalties at any time before the end of the two-year period beginning on the date the penalties were assessed.  31 U.S.C. § 5321(b)(2)(A).  This action is brought within the two-year limitations period.

## RELIEF REQUESTED

WHEREFORE, Plaintiff the United States of America respectfully requests that the Court enter judgment:

(a)     awarding the United States the amount of Schik's assessed FBAR Penalties totaling $8,822,806, plus interest and additional penalties as allowed by law to the date of payment; and

(b)     granting the United States its costs incurred in connection with this action, along with such further relief as the Court may deem just and proper.

Dated:      March 11, 2020
            New York, New York

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York

                        By:    /s/ Talia Kraemer
                              TALIA KRAEMER
                              Assistant United States Attorney
                              86 Chambers Street, 3rd Floor
                              New York, New York 10007
                              Tel.:  (212) 637-2822
                              E-mail: talia.kraemer@usdoj.gov