**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                          Plaintiff,

          -v-

WALTER SCHIK,

                    Defendant.

Case No. 20 Civ. 2211 (MKV)


**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES OF AMERICA'S**
**MOTION FOR SUMMARY JUDGMENT**

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Telephone:  (212) 637-2822
Facsimile:   (212) 637-2702

TALIA KRAEMER
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND .......................................................................................................2

I.    Regulatory Background: Required Disclosures of Foreign Financial
Accounts Under the Bank Secrecy Act...................................................2

II.    Factual Background ...............................................................................3

    A.  Schik's Foreign Accounts at UBS ...................................................4

    B.  Schik's 2007 Tax Return .................................................................5

    C.  The UBS Deferred Prosecution Agreement and Schik's Belated
Disclosures.........................................................................................6

    D.  IRS's Assessment of Civil Penalties................................................7

ARGUMENT ...........................................................................................................8

I.    Legal Standards.......................................................................................8

    A.  Summary Judgment ..........................................................................8

    B.  Standard of Review of the IRS's Penalty Assessment....................8

    C.  Willful Violations of the BSA's Foreign Account Disclosure
Requirement.......................................................................................9

II.    The Undisputed Evidence Establishes that Walter Schik Is Liable
for a Penalty for Willfully Failing to Disclose His Foreign Bank
Accounts ..............................................................................................10

    A.  Schik Meets All Threshold Elements of an FBAR Violation.........10

    B.  Schik's FBAR Violation Was Willful ...........................................11

III.    This Matter Should Be Remanded to the IRS for Calculation of the
Correct Penalty Amount .......................................................................14

CONCLUSION.......................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................... 8

*Anemone v. Metro. Transp. Auth.*,
    629 F.3d 97 (2d Cir. 2011)........................................................................................... 8

*Bedrosian v. United States*,
    912 F.3d 144 (3d Cir. 2018)..................................................................................... 9, 10

*Brown v. Eli Lilly & Co.*,
    654 F.3d 347 (2d Cir. 2011)......................................................................................... 8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................... 8

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985)................................................................................................... 15

*United States v. Garrity*,
    304 F. Supp. 3d 267 (D. Conn. 2018) ...................................................................... 10

*Hayman v. Comm'r*,
    992 F.2d 1256 (2d Cir. 1993)..................................................................................... 11

*Landa v. United States*,
    153 Fed. Cl. 585 (2021) .................................................................................. 10, 11, 14

*Lefcourt v. United States*,
    125 F.3d 79 (2d Cir. 1997)........................................................................................... 9

*Norman v. United States*,
    942 F.3d 1111 (Fed. Cir. 2019)........................................................................ 9, 11, 12

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)................................................................................................... 9, 10

*Shannon v. N.Y.C. Transit Auth.*,
    332 F.3d 95 (2d Cir. 2003)........................................................................................... 8

*United States v. Flume*,
    No. 5:16-CV-73, 2018 WL 4378161 (S.D. Tex. Aug. 22, 2018) ............................. 12

*United States v. Gentges*,
  No. 18 Civ. 7910 (KMK), 2021 WL 1222764 n.2 (S.D.N.Y. Mar. 31, 2021) ................. *passim*

*United States v. Horowitz*,
  361 F. Supp. 3d 511 (D. Md. 2019) .......................................................................... 8

*United States v. Horowitz*,
  978 F.3d 80 (4th Cir. 2020) ................................................................................ *passim*

*United States v. McBride*,
  908 F. Supp. 2d 1186 (D. Utah 2012) ..................................................................... 10

*United States v. Rum*,
  995 F.3d 882 (11th Cir. 2021) ....................................................................... 9, 10, 11

*United States v. Schwarzbaum*,
  No. 18-CV-81147, 2020 WL 1316232 (S.D. Fla. Mar. 20, 2020) .......................... 12

*United States v. Sturman*,
  951 F.2d 1466 (6th Cir. 1991) ................................................................................. 10

*United States v. Williams*,
  489 F. App'x 655 (4th Cir. 2012) ..................................................................... 10, 11

*United States v. Williams*,
  No. 09 Civ. 437, 2014 WL 3746497 (E.D. Va. June 26, 2014) ................................ 9

**Statutes**

5 U.S.C. § 706(2)(A) ................................................................................................... 9
31 U.S.C. § 3717 ......................................................................................................... 3
31 U.S.C. § 5314 ...................................................................................................... 1, 2
31 U.S.C. § 5321 .................................................................................................. 1, 3, 7

**Rules**

Fed. R. Civ. P. 5.2(a)(4) ............................................................................................. 3
Fed. R. Civ. P. 56(a) .................................................................................................. 8
Fed. R. Civ. P. 56(c)(1) .............................................................................................. 8

**Regulations**

31 C.F.R. § 103.24 (2008) .......................................................................................... 2

**Other Authorities**

1970 U.S.C.C.A.N. 4394 ............................................................................................ 1

iii

The United States of America (the "United States" or the "government"), by its attorney Audrey Strauss, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The United States filed this action against defendant Walter Schik ("Schik") to collect civil penalties assessed due to his willful failure to file a report of foreign financial accounts commonly known as the "FBAR" pursuant to the Bank Secrecy Act ("BSA"). *See* 31 U.S.C. §§ 5314, 5321. Congress passed the BSA to facilitate and monitor compliance with currency regulation and tax laws. *See* H.R. Rep. No. 91-975, at 13 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4397-98. When Congress enacted the statute in 1970, and amended it in 2004, one of its objectives was to combat tax evasion and abusive tax schemes employing offshore bank accounts, particularly in jurisdictions with extensive bank secrecy laws, like Switzerland. *See id.*; S. Rep. No. 108-192, at 108 (2003).

In 2007, Schik maintained two bank accounts at UBS AG ("UBS") in Switzerland. The undisputed facts establish that Schik willfully failed to report his interest in those accounts in 2007, which held a combined value of more than $16 million at the end of that year. As a result of Schik's willful violation of the BSA, the Internal Revenue Service ("IRS") assessed penalties against Schik totaling over $8 million, which have subsequently increased due to interest and statutory penalties. To date, Schik has refused to pay the assessed penalties.

It is undisputed that Schik was required to file an FBAR for 2007 and failed to do so. Further, on the record developed during discovery, the undisputed facts establish that Schik's violation was willful. In this civil proceeding, the United States can establish that Schik's

conduct was willful by demonstrating that he was at least reckless or willfully blind as to the

FBAR disclosure requirement.  The record includes numerous undisputed indications of Schik's

willfulness, including (a) his submission of a federal tax return in which he falsely stated that he

had no foreign accounts in 2007; (b) his failure to consult with his accountant concerning

disclosure requirements or tax consequences of the UBS accounts—or even to reveal to his

accountant the existence of the accounts; and (c) his interactions with UBS, which include

signing an instruction preventing UBS from investing in U.S. securities on his behalf, using a

numbered bank account and an account in the name of a shell company, and instructing the bank

to send his mail to an address in Switzerland rather than mailing it to him in New York.

Because the undisputed facts establish that Schik willfully failed to file an FBAR,

summary judgment should be granted to the United States with respect to Schik's liability for a

penalty for a willful FBAR violation.  However, the United States recognizes that there appears

to have been an error in the IRS's calculation of the penalty amount.  Thus, the United States

respectfully requests that the Court remand this matter to the IRS for recalculation and entry of a

corrected penalty amount.

## BACKGROUND

### I.     Regulatory Background: Required Disclosures of Foreign Financial Accounts Under the Bank Secrecy Act

Under the BSA, the Secretary of the Treasury may require U.S. persons to report

certain transactions with foreign financial agencies.  *See* 31 U.S.C. § 5314.  The statute's

implementing regulations in effect during the time period at issue in this case required "[e]ach

person subject to the jurisdiction of the United States . . . having a financial interest in, or

signature or other authority over, a bank, securities, or other financial account in a foreign

country" to report that interest for each calendar year in which such relationship existed.  31

2

C.F.R. § 103.24 (2008).[1]  To fulfill this requirement, a U.S. person was required file a Form TD F

90-22.1, Report of Foreign Bank and Financial Accounts, also known as an "FBAR," by June 30

"of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained

during the previous calendar year."  *Id.* § 103.27(c) (2008).[2]

The government may assess civil penalties against a person who fails to comply

with the reporting requirements of § 5314.  *See* 31 U.S.C. § 5321(a)(5).  Non-willful violations

are subject to penalties of no more than $10,000.  *Id.* § 5321(a)(5)(B)(i).  However, if

noncompliance is willful, the statute allows for a maximum penalty equaling the greater of

$100,000 or 50% of the balance in the account at the time of the violation.  *Id.* §§ 5321(a)(5)(C)-

(D).  The Internal Revenue Manual provides that for calendar years 2015 and earlier, the date of

the violation is "the end of the day June 30th of the year following the calendar year for which

accounts must be reported (the due date for filing the FBAR)."  Internal Revenue Manual

§ 4.26.16.5.2.  The penalty set forth under § 5321(a)(5)(C) is subject to interest and further

penalties. *See* 31 U.S.C. § 3717.

## II.     Factual Background

In 2007, Schik was a U.S. citizen residing in New York City.  Rule 56.1 Statement ¶¶ 1-

2.  At the time, Schik had financial interests in and/or signature or other authority over two

financial accounts at UBS in Switzerland, with account master numbers ending 8030 (the "8030

Account") and 6451 (the "6451 Account").[3]  *Id.* ¶ 5.  The balance of each UBS account in 2007

---

[1] The relevant regulations have been amended since the time at issue and recodified at 31 C.F.R.
pt. 1010.  The 2008 version of these regulations is available at https://www.govinfo.gov/
content/pkg/CFR-2008-title31-vol1/pdf/CFR-2008-title31-vol1-part103-subpartB.pdf.
[2] Form TD F 90-22.1 has since been replaced by FinCEN Form 114.  *See* Report of Foreign
Bank and Financial Accounts, U.S. Department of the Treasury, https://www.treasury.gov/
services/Pages/TD-F-90-22.1-Report-of-Foreign-Bank-and-Financial-Accounts.aspx.
[3] Pursuant to Fed. R. Civ. P. 5.2(a)(4), all but the last four digits of financial account numbers

was greater than $10,000.  *Id.* ¶ 6.  However, Schik failed to file a timely FBAR to report his

interest in these accounts.  *Id.* ¶ 7.

### A.  Schik's Foreign Accounts at UBS

The 8030 and 6351 Accounts at UBS were opened in 2000.  *Id.* ¶¶ 10-11, 22.  Before

these accounts were opened, Schik had a prior account at UBS with account number ending

6447.  *Id.* ¶ 8.  In November 2000, Schik signed a UBS "Instructions for closing account" form

that directed UBS to close the 6447 account and apply the balance of the account to the 8030 and

6451 Accounts.  *Id.* ¶ 10.

The 8030 Account was opened as a "numbered account" rather than a "name account,"

*id.* ¶ 12, which meant that Schik's name would not appear on certain account records and

correspondence, *see United States v. Gentges*, No. 18 Civ. 7910 (KMK), 2021 WL 1222764, at

*2 n.2 (S.D.N.Y. Mar. 31, 2021).  Schik personally signed the account opening form for the 8030

Account, which identified him as the account holder.  Rule 56.1 Statement ¶ 11.  The account

opening form directed UBS to send correspondence for the account to an address in Switzerland

to the attention of a person named David Beck, who assisted Schik with managing the account,

rather than to Schik's home in the United States.  *Id.* ¶¶ 13-14.  Schik also signed various other

forms for the 8030 Account, including forms identifying himself as the account's beneficial

owner and forms granting power of attorney over the account to his wife and sons.  *Id.* ¶¶ 15-17.

Notably, Schik signed a document directing UBS not to invest in U.S. securities for tax reasons:

the form stated, "I am aware of the new tax regulations.  To this end, I declare that I expressly

agree that my account shall be frozen for all new investments in US securities as from 1

November 2000."  *Id.* ¶ 18.

---

herein are redacted.

The 6451 Account was opened with an entity called Tikva Consulting S.A. ("Tikva Consulting") identified as the account holder, though UBS documents identify Schik as the account's beneficial owner, an authorized signatory, and an "attorney" for the account.  *Id.* ¶¶ 22, 24-26.  Tikva Consulting was a Panamanian entity created in or around November 2000, the same month the 6451 Account was opened, which Schik's attorneys have described in correspondence to the IRS as "the alter ego of Mr. Schik" which "did not, at any time, engage in any business activity or have any legitimate business purpose."  *Id.* ¶¶ 20-21.  Like the 8030 Account, correspondence for the 6451 Account was to be sent to Mr. Beck in Switzerland.  *Id.* ¶ 23.

Though Mr. Beck managed Schik's UBS accounts, Schik received and reviewed account statements from Mr. Beck, with whom he corresponded a few times per year.  *Id.* ¶¶ 28-29. Eventually, Mr. Beck's son, Josef Beck, took over his duties and Schik corresponded with him regarding the accounts.  *Id.* ¶ 30.  In 2012, Josef Beck was indicted in the U.S. District Court for the Southern District of New York on charges of conspiring with U.S. taxpayers and foreign financial institutions, including UBS, to enable U.S. taxpayers to hide Swiss bank accounts and related income from the IRS.  *Id.* ¶ 31.

In 2007, the 8030 and 6451 Accounts contained substantial funds.  According to "Positions Overview" documents issued by UBS, as of December 31, 2007, the 6451 Account contained total net assets of $15,649,573, and the 8030 Account contained total net assets of $980,921, comprising $975,803 in market value and $5,118 in accrued interest.  *Id.* ¶¶ 32-33.

**B.  Schik's 2007 Tax Return**

Schik filed an individual income tax return, Form 1040, jointly with his wife, for tax year 2007.  *Id.* ¶ 37.  In Schedule B of the return, question 7(a) asked whether Schik had an interest in

or signature or other authority over any foreign financial accounts in that tax year. *Id.* ¶ 38. Schik's 2007 tax return incorrectly answered "no" to this question. *Id.* ¶¶ 41-42. Additionally, question 7(a) further directed Schik to "[s]ee instructions for exceptions and filing requirements for Form TD F 90-22.1," the FBAR form. *Id.* ¶ 40. However, Schik did not timely file an FBAR for the 2007 tax year. *Id.* ¶ 7.

Schik's 2007 tax return was prepared by his accountant, Kenneth Laufer. *Id.* ¶ 43. Schik was given the opportunity to review the tax return after Mr. Laufer prepared it. *Id.* ¶ 44. However, according to Schik, he signed the return without reviewing it. *Id.* ¶ 45.

### C.  The UBS Deferred Prosecution Agreement and Schik's Belated Disclosures

In early 2009, it was publicly announced that UBS had entered into a deferred prosecution agreement with the U.S. Department of Justice, on charges of conspiring to defraud the United States by impeding the IRS. *Id.* ¶ 46. As part of the deferred prosecution agreement, UBS agreed to provide the U.S. government with the identities of certain U.S. customers and to exit the business of providing banking services to U.S. clients with undeclared accounts. *Id.* ¶ 47. Schik learned about the government's action against UBS sometime in 2009 through newspaper reports. *Id.* ¶ 48. Further, at some point in 2009, UBS required that Schik's accounts be closed. *Id.* ¶ 49.

After learning about the UBS investigation, Schik notified his accountant, Mr. Laufer, about his UBS accounts and submitted a "voluntary disclosure" to the IRS regarding the accounts. *Id.* ¶¶ 50-51. The IRS's 2009 Offshore Voluntary Disclosure Program was a mechanism for taxpayers who had previously undisclosed offshore accounts to seek to resolve their liability with the IRS. *See* 2009 Offshore Voluntary Disclosure Program, IRS, https://www.irs.gov/newsroom/2009-offshore-voluntary-disclosure-program. The IRS declined

Schik's voluntary disclosure by letter dated February 25, 2010, "due to timeliness[4] and/or completeness."  Rule 56.1 Statement ¶ 52.

When Schik filed his 2008 tax return in or around October 2009, he disclosed that he had an interest in Swiss accounts during that year.  *Id.* ¶ 54.  Schik belatedly filed an FBAR for 2007 in December 2010.  *Id.* ¶ 55.

### D.  IRS's Assessment of Civil Penalties

On March 14, 2016, the IRS notified Schik that it proposed to assess penalties against him for his willful failure to comply with FBAR filing requirements for 2007.  *Id.* ¶ 57.  On March 12, 2018, the IRS assessed penalties totaling $8,822,806 against Schik for his willful failure to report the 8030 and 6451 Accounts for 2007.[5]  *Id.* ¶ 58.  The IRS calculated the penalty by relying on UBS records to determine the balances of the 8030 and 6451 Accounts as of December 31, 2007, and then adjusting those balances based on records of account transactions that took place between January 1, 2008, and June 30, 2008, in order to determine the value of the accounts as of June 30, 2008, the date of Schik's FBAR violation.  *Id.* ¶¶ 34-35.  Based on these calculations, the IRS concluded that the 8030 and 6451 Accounts had a total value of $17,645,613 as of June 30, 2008.  *Id.* ¶ 35.  The assessed penalties reflect 50% of that amount. To date, Schik has not paid the assessed penalties.  *Id.* ¶ 60.

---

[4] Under program guidelines, to be "timely," a disclosure needed to be received by the IRS before the IRS (1) initiated a civil examination or criminal investigation of the taxpayer, (2) received information about the taxpayer's noncompliance from a third party, (3) initiated a civil examination or criminal investigation directly related to the taxpayer's liability, or (4) acquired information directly related to the taxpayer's liability from a criminal enforcement action.  *See* IRS Voluntary Disclosure Program, irs.gov/pub/newsroom/overview_en.pdf.

[5] By statute, the IRS may assess FBAR penalties up to six years after the filing deadline. *See* 31 U.S.C. § 5321(b)(1).  However, Schik's representative agreed to extend the IRS's deadline to assess penalties for 2007, such that the ultimate deadline was December 31, 2018.  Rule 56.1 Statement ¶ 56.

**ARGUMENT**

I.      **Legal Standards**

        A.  **Summary Judgment**

        Summary judgment is appropriate if the moving party bears the burden of demonstrating

that there is no genuine dispute of material fact and the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).   In reviewing a summary judgment

motion, the Court construes the evidence "in the light most favorable to the non-movant and

draw[s] all reasonable inferences in that party's favor." *Anemone v. Metro. Transp. Auth.*, 629

F.3d 97, 113 (2d Cir. 2011).

        "[T]he nonmoving party must come forward with specific facts showing that there is a

genuine issue of material fact for trial."  *Shannon v. N.Y.C. Transit Auth*., 332 F.3d 95, 99 (2d

Cir. 2003); *see also* Fed. R. Civ. P. 56(c)(1).  The existence of a factual dispute does not preclude

summary judgment where "the evidence is merely colorable, or is not significantly probative."

*Anderson*, 477 U.S. at 249 (citation omitted).  The nonmoving party may not rely solely on

"conclusory allegations or unsubstantiated speculation" to defeat a motion for summary

judgment, but instead "must come forward with specific evidence demonstrating the existence of

a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

        B.  **Standard of Review of the IRS's Penalty Assessment**

        A district court reviews *de novo* whether a defendant is liable for a tax penalty for willful

failure to fulfill the reporting requirements applicable to foreign accounts.  *See United States v.*

*Horowitz*, 361 F. Supp. 3d 511, 528-29 (D. Md. 2019).  However, because the BSA gives the

Secretary of the Treasury discretion as to the amount of the penalty, a court reviews the amount

of the agency's penalty assessment only to assess whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *See* 5 U.S.C. § 706(2)(A); *Gentges*, 2021 WL 1222764, at *15; *United States v. Williams*, No. 09 Civ. 437, 2014 WL 3746497, at *1 (E.D. Va. June 26, 2014).

### C.  Willful Violations of the BSA's Foreign Account Disclosure Requirement

In civil enforcement of the BSA, to establish that an individual acted willfully, the government need only demonstrate that the defendant was reckless or willfully blind to his obligations.  The Supreme Court has held that "where willfulness is a statutory condition of civil liability, [it] generally . . . cover[s] not only knowing violations of a standard, but reckless ones as well."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007); *see Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997) ("willfulness," in the context of a civil penalty for willfully failing to disclose information to the IRS, "requires only that a party act voluntarily in withholding requested information, rather than accidentally or unconsciously").

Thus, every federal court of appeals that has considered the question has concluded that reckless conduct suffices to establish willfulness for purposes of the FBAR penalty.  *See United States v. Rum*, 995 F.3d 882, 889 (11th Cir. 2021) ("[W]e hold that willfulness in § 5321 includes reckless disregard of a known or obvious risk.  In so doing, we join with every other circuit court that has interpreted this provision."); *United States v. Horowitz*, 978 F.3d 80, 88 (4th Cir. 2020); *Norman v. United States*, 942 F.3d 1111, 1115 (Fed. Cir. 2019); *Bedrosian v. United States*, 912 F.3d 144, 152-53 (3d Cir. 2018); *see also Gentges*, 2021 WL 1222764, at *8.  "[A] person commits a reckless violation of the FBAR statute by engaging in conduct that violates 'an objective standard: action entailing an unjustifiably high risk of harm that is either known or so

obvious that it should be known.'" *Bedrosian*, 912 F.3d at 153 (quoting *Safeco*, 551 U.S. at 68));

*see Gentges*, 2021 WL 1222764, at *8 (applying the same standard).

The government may prove willfulness through inference from conduct meant to conceal

or mislead the government about sources of income or other financial information.  *See United*

*States v. Williams*, 489 F. App'x 655, 659 (4th Cir. 2012).  Willfulness may be shown by

"circumstantial evidence and reasonable inferences drawn from the facts because direct proof of

the taxpayer's intent is rarely available."  *United States v. McBride*, 908 F. Supp. 2d 1186, 1205

(D. Utah 2012).  Further, willfulness encompasses conduct that satisfies the "willful blindness"

standard in the criminal context, under which a person cannot escape liability by "denying the

patently obvious."  *Gentges*, 2021 WL 1222764, at *8 (internal quotation marks and citation

omitted).  Thus, willfulness "'can be inferred from a conscious effort to avoid learning about

reporting requirements.'"  *Williams*, 489 F. App'x at 658 (quoting *United States v. Sturman*, 951

F.2d 1466, 1476 (6th Cir. 1991)).

The government must establish willfulness by a preponderance of the evidence.  *United*

*States v. Garrity*, 304 F. Supp. 3d 267, 270 (D. Conn. 2018) (collecting cases).  Although

willfulness is a question of fact, it may be resolved by summary judgment on an appropriate

record.  *See, e.g.*, *Horowitz*, 978 F.3d at 89; *Rum*, 995 F.3d at 890; *Landa v. United States*, 153

Fed. Cl. 585, 599 (2021); *Gentges*, 2021 WL 1222764, at *14.

**II.     The Undisputed Evidence Establishes that Walter Schik Is Liable for a Penalty
          for Willfully Failing to Disclose His Foreign Bank Accounts**

**A.  Schik Meets All Threshold Elements of an FBAR Violation**

Schik does not dispute that each threshold element for a violation of the FBAR reporting

requirements is satisfied in this case.  That is, Schik concedes that in 2007 (1) he was a U.S.

citizen, (2) with a financial interest in or signature and/or other authority over the 8030 and 6451

Accounts, and (3) the balance in the 8030 and 6451 Accounts exceeded $10,000 during the calendar year. Rule 56.1 Statement ¶¶ 1, 5-6. Schik also concedes that he did not timely file an FBAR for 2007. *Id.* ¶ 7. Thus, the sole question is whether Schik's failure to file the required FBAR was willful, such that the enhanced penalty framework applies.

### B.  Schik's FBAR Violation Was Willful

The undisputed facts in the record establish Schik's willfulness as a matter of law. As an initial matter, Schik failed to review his 2007 individual income tax return prepared by his tax preparer, which incorrectly stated that he had no interest in or signature or other authority over any foreign financial account. Schik's failure even to review his return demonstrates that he was objectively reckless toward the relevant reporting requirements. Taxpayers are charged with constructive knowledge of the contents of their tax returns, *see Hayman v. Comm'r*, 992 F.2d 1256, 1262 (2d Cir. 1993), and had Schik reviewed his return, he would have learned that he was required to report his foreign accounts and would have been directed to the filing instructions for the FBAR form, *see* Rule 56.1 Statement ¶¶ 38-40.

Objectively, Schik's blind approval of tax returns prepared by his accountant, to whom he had not disclosed the existence of his foreign accounts, posed an unjustifiably high risk that he was failing to comply with reporting requirements regarding those accounts. Courts have repeatedly found that taxpayers acted recklessly where they failed to review their tax returns, and those returns wrongly failed to disclose foreign accounts. *See Gentges*, 2021 WL 1222764, at *9 ("[M]ost courts have held that where, as here, a defendant provides false information regarding foreign bank accounts by failing to review carefully his income tax return, that defendant has shown reckless disregard toward, and thus has willfully violated, the FBAR reporting

obligation."); *see also Rum*, 995 F.3d at 891; *Norman*, 942 F.3d at 1116-17; *Horowitz*, 978 F.3d at 89-90; *Williams*, 489 F. App'x at 659; *Landa*, 2021 WL 1526511, at *12.

While a few courts have declined to charge taxpayers with constructive knowledge of their tax returns in FBAR cases, those courts' reasoning is unpersuasive.  For example, a district court in Texas concluded that such a rule would eliminate the distinction between willful and non-willful FBAR violations.  *See United States v. Flume*, No. 5:16-CV-73, 2018 WL 4378161, at *7 (S.D. Tex. Aug. 22, 2018); *see also United States v. Schwarzbaum*, No. 18-CV-81147, 2020 WL 1316232, at *8 (S.D. Fla. Mar. 20, 2020) (applying the same reasoning in rejecting the government's argument that the taxpayer knowingly violated FBAR reporting requirements).  However, as other courts have observed in rejecting this argument, a taxpayer who declines to review his tax return and thus falsely affirms that he has no foreign accounts can still be acting non-willfully—for instance, if the taxpayer has no knowledge of the foreign accounts.  *See Norman*, 942 F.3d at 1115; *Gentges*, 2021 WL 1222764, at *11.

*Flume* is further distinguishable from the present case because in that case, there was a factual dispute as to whether the taxpayer had disclosed the existence of his unreported foreign account to his tax preparer.  *Flume*, 2018 WL 4378161, at *3, *6.  As a result, the court held that it was "arguably not reckless for him to . . . rel[y] on his tax preparer's competence in preparing the return." *Id.* at *9.  That reasoning is inapplicable here, where Schik failed to disclose to his accountant the existence of his foreign accounts—which contained millions of dollars—until he learned about the U.S. Government's enforcement actions against UBS.

In addition to Schik's reckless failure to review his tax return, there are several other indicators of willfulness that establish a lack of genuine dispute of material fact on this issue. UBS records show that he took multiple steps to conceal the existence of the 8030 and 6451

12

Accounts from the IRS.  The 8030 Account was opened as a "numbered account," and the 6451 Account was opened in the name of a shell entity established in Panama, a widely recognized tax haven.  Rule 56.1 Statement ¶¶ 12, 20-22.  Both of these actions had the effect of reducing any paper trail linking the accounts to Schik.  Further, Schik's election to have all correspondence for the accounts mailed to the Becks in Switzerland, rather than to him, further reduced any U.S.-based paper trail associated with the accounts.  *Id.* ¶¶ 13, 23.  Finally, Schik signed a form for the 8030 Account directing UBS not to invest his funds in U.S. securities, which stated: "I am aware of new tax regulations.  To this end, I declare that I expressly agree that my account shall be frozen for all new investments in US securities as from 1 November 2000."  *Id.* ¶ 18.  At a minimum, this form placed Schik on notice that his UBS accounts had potential U.S. tax implications.  Courts in other FBAR cases have concluded that similar evidence supports a finding of willfulness as a matter of law.  *See, e.g.*, *Horowitz*, 978 F.3d at 89-90 (willfulness established where, *inter alia*, accounts set up as numbered accounts and mail held by bank); *Gentges*, 2021 WL 1222764, at *14 (willfulness established on summary judgment where, *inter alia*, accounts were set up as numbered accounts, mail was not sent to the taxpayer in the United States, and the taxpayer signed forms directing bank not to invest in U.S. securities).

Though Schik testified that he had left the management of the accounts to the Becks' discretion and simply signed the forms that he was told to sign, he does not dispute that he personally signed account records dictating the format and mail preferences for the 8030 Account, as well as a form for the 6451 Account that identified him as an attorney for a financial account in Tikva Consulting's name.  *See* Kraemer Decl. ¶ 5, Ex. D at 62:18-63:4, 68:4-9; Rule 56.1 Statement ¶¶ 11, 18, 25.  Further, even if Schik did not read these particular reforms, once Schik received periodic records about the account from the Becks—one of whom was later

13

indicted for assisting taxpayers in concealing offshore accounts from the IRS—he would have been aware that one of his accounts was in a shell entity's name and that his name was absent from the other account's records.  In the face of similar protestations of ignorance by taxpayers, courts have held that such actions "evince[] more than mere negligence." *Horowitz*, 978 F.3d at 90; *see also Gentges*, 2021 WL 1222764, at *14.

Finally, Schik's recklessness is underscored by the large amount of funds in his UBS accounts.  Together, the accounts contained more than $16 million in 2007, demonstrating that these were not accounts about which Schik may have merely forgotten.  Additionally, the substantial funds in the accounts further show that it was reckless of Schik not to disclose the accounts to his accountant before reading in the newspaper that the U.S. government was taking enforcement action with respect to UBS.  *See Horowitz*, 978 F.3d at 90; *Gentges*, 2021 WL 1222764, at *14; *Landa*, 2021 WL 1526511, at *12.

Collectively, these undisputed facts establish that Schik was objectively reckless in failing to comply with the FBAR reporting requirements.  At a minimum, Schik should have known that there was a high risk that he was not complying with tax reporting requirements for his offshore accounts containing millions of dollars in funds.  Thus, summary judgment should be granted for the United States as to Schik's liability for penalties for a willful FBAR violation.

## III.   This Matter Should Be Remanded to the IRS for Calculation of the Correct Penalty Amount

The amount of the penalty imposed by the IRS is reviewed for whether it is arbitrary and capricious.  *See Gentges*, 2021 WL 1222764, at *15.  Notwithstanding this deferential standard of review, the government recognizes that there appears to have been an error in the IRS's calculation of Schik's FBAR penalty.  Specifically, the IRS's calculation was based in part on the revenue agent's determination that the aggregate balance in the 8030 and 6451 Accounts as

14

of December 31, 2007, was $17,576,225.  Rule 56.1 Statement ¶ 34.  However, UBS records reflect that as of December 31, 2007, the net assets in the 6451 Account totaled $15,649,573, and the net assets in the 8030 Account totaled $980,921, leading to a combined total of $16,630,494—approximately $1 million less than the figure relied upon by the revenue agent. *Id.* ¶¶ 32-33.  The government has been unable to identify records supporting the revenue agent's conclusion as to the accounts' aggregate balance as of December 31, 2007.[6]

If a court declines to uphold agency action under arbitrary and capricious review because "the record before the agency does not support the agency action," then "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *Gentges*, 2021 WL 1222764, at *16 (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).  Accordingly, the United States respectfully requests that this matter be remanded to the IRS so that the IRS can determine and assess the correct amount for the FBAR penalty.

## CONCLUSION

For the foregoing reasons, this Court should grant the United States' motion for summary judgment on the issue of whether Schik is liable for penalties for willful violation of the FBAR reporting requirements, and remand this case to the IRS for the calculation of the correct penalty amount.

---

[6] Based on the government's investigation, it appears that the revenue agent may have mistakenly copied a number from a chart of monthly balances for the 8030 Account that reflected the account's balance as of December 2016, not the balance as of December 31, 2007.

Dated: New York, New York                    Respectfully submitted,
       August 20, 2021

                                                 AUDREY STRAUSS
                                                 United States Attorney for the
                                                 Southern District of New York

            By:    /s/ Talia Kraemer
                                                 TALIA KRAEMER
                                                 Assistant United States Attorney
                                                 Tel.:   (212) 637-2822
                                                   Fax:   (212) 637-2702
                                                   E-mail: talia.kraemer@usdoj.gov

16