```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/8/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

           -against-

WALTER SCHIK,

                    Defendant.

20-cv-02211 (MKV)

OPINION AND ORDER DENYING
SUMMARY JUDGMENT

MARY KAY VYSKOCIL, United States District Judge:

This is a tax case in which the Government alleges that Defendant Walter Schik, a Holocaust survivor, failed to file a foreign bank account reporting form with the Internal Revenue Service (the "IRS" or the "Service"), which now seeks by this action to collect an almost nine-million-dollar civil penalty assessed against him for that failure.

The form in question, Form TD F 90-22.1 (the "FBAR"), must be filed with the Department of the Treasury to disclose that a filer has a financial interest in a foreign financial account with an aggregate value in excess of $10,000 during the taxable year. Pursuant to the Bank Secrecy Act, 31 U.S.C. § 5314, "a person in, and doing business in, the United States, [must] keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency." 31 U.S.C. § 5314(a). Willful failure to file an FBAR may result in a civil penalty, assessed by the IRS, from $100,000 up to 50% of the balance in the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C).

It is undisputed that Mr. Schik was required to file an FBAR for the 2007 tax year and did not do so. The IRS assessed a penalty totaling $8,822,806 against Mr. Schik for the failure to file the FBAR. When Mr. Schik did not pay, the United States brought this action seeking to

1

recover the penalty. The Government now moves for summary judgment. For the reasons stated herein, the Government's Motion is denied.

## BACKGROUND[1]

Walter Schik is an almost one hundred-year-old Holocaust survivor. 56.1 ¶¶ 61-62. At just thirteen years of age, Mr. Schik was forcibly separated from his family in Austria and sent to a Hungarian concentration camp. 56.1 ¶ 61. The Holocaust interrupted Mr. Schik's formal education, leaving him with only an elementary-level education, which he had begun prior to internment. 56.1 ¶¶ 61-62. Mr. Schik's family died in the concentration camps, but, somehow, he survived. 56.1 ¶¶ 61, 63. After the war ended and he was liberated from the Hungarian camp, Mr. Schik moved to the United States in 1947. 56.1 ¶ 63. Ten years later, he became a United States citizen. 56.1 ¶ 63.

Shortly after becoming a citizen, Mr. Schik opened a bank account at UBS AG ("UBS") in Switzerland to deposit money "recovered from the Holocaust" from relatives that died in the concentration camps. 56.1 ¶ 63. Because Switzerland was neutral during World War II, Mr. Schik's accounts there served "as a safety-net in case of another Holocaust." 56.1 ¶¶ 64-65. The money had no ties to the United States, and Mr. Schik did not touch the money. 56.1 ¶¶ 63-65.

Mr. Schik did not manage the money in the Swiss account. He left that task to David Beck, "a Swiss money manager," and his son, Josef Beck, who later took over his father's business. 56.1 ¶¶ 14, 65. At various times, David and Josef Beck "opened" accounts on behalf of Mr. Schik, who "did not fill out any of [the] documents aside from signing his name" to "stack[s] of forms." *See* 56.1 ¶ 13. Mr. Schik "spoke by phone with David Beck a few times per

---

[1] The Court cites to Mr. Schik's Rule 56.1 counterstatement [ECF No. 39-7] ("56.1") throughout because it contains the Parties' assertions and responses. As it must, the Court views all facts in the light most favorable to Mr. Schik as the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

2

year," 56.1 ¶ 29, later working with Josef Beck when he succeeded his father, 56.1 ¶ 30.  Over the years, the Beck's opening and closing of various accounts ultimately resulted in two bank accounts relevant here: one account with an account number terminating in 8030 (the "8030 Account"), and one terminating in 6451 (the "6451 Account") (collectively, "the Accounts").  56.1 ¶¶ 5, 63.

The forms the Becks had Mr. Schik sign reflected that he was the account holder of the 8030 Account, 56.1 ¶¶ 11-12, and that "correspondence for the account should be mailed to . . . David Beck at an address in Zurich, Switzerland."  56.1 ¶¶ 13.  Mr. Schik also signed his name to a form stating that the 8030 Account "shall be frozen for all new investments in US securities as from 1 November 2000."  56.1 ¶ 18.  He routinely signed forms that identified himself as the principal of that account, without himself filling out the information on the form.  56.1 ¶¶ 16, 19.

The 6451 Account was structured slightly differently.  That account was held by Tikva Consulting S.A., a financial consulting entity chartered in Panama.  56.1 ¶¶ 20, 22.  Tikva was described to the IRS as "'the alter ego of Mr. Schik' which 'did not, at any time, engage in any business activity or have any legitimate purpose.'"  56.1 ¶ 21.  Correspondence for the 6451 Account was also sent to David Beck in Zurich, Switzerland.  56.1 ¶ 23.  While Mr. Schik was not the account holder of the 6451 Account, he signed papers stating that he was the "beneficial owner," and the "attorney" for the account.  56.1 ¶¶ 24-25.  "The funds in the account in Tikva's name were [Mr.] Schik's funds" and he was an "authorized signatory of the account."  56.1 ¶¶ 26-27.

In 2007, the 8030 Account and the 6451 Account contained a maximum balance of $1,594,398 and $15,649,573 respectively.  56.1 ¶ 36.  Mr. Schik's tax forms that year were

3

prepared by his accountant, Kenneth Laufer. 56.1 ¶¶ 44, 66. Mr. Laufer never asked if Mr. Schik had funds outside the United States, and Mr. Schik never discussed his Holocaust safety net with Mr. Laufer. 56.1 ¶¶ 50, 66. Mr. Laufer also never asked Mr. Schik to complete a tax preparation questionnaire. 56.1 ¶ 66.

Question 7(a) of Schedule B of his 2007 tax return asked "whether [Mr. Schik] had an interest in or signature or other authority over any foreign financial accounts in 2007," and directed completion of the form if he "had a foreign account." 56.1 ¶¶ 38-39. The prefilled answer to Question 7(a) of Schedule B, apparently inputted by his tax preparer's software, was "no." 56.1 ¶ 41. Mr. Schik admits the answer was "incorrect" because, "in fact, [Mr.] Schik had an interest in or signature or other authority over foreign financial accounts at UBS in 2007." 56.1 ¶¶ 41-42. While Mr. Schik "had the opportunity to review his 2007 tax return after it was prepared by Mr. Laufer," he did not do so before signing. 56.1 ¶¶ 45. Instead, he "looked generally at his 2007 tax return before signing it." 56.1 ¶ 45.

A few years later, Josef Beck, the manager of Mr. Schik's Swiss accounts, was indicted in this Court on charges of "conspiring with U.S. taxpayers and foreign financial institutions, including UBS, to enable Beck's U.S. taxpayer clients to hide Swiss bank accounts and income generated in those accounts from the IRS." 56.1 ¶ 31. For its part, UBS agreed to provide the Government the identities of certain United States customers pursuant to a deferred prosecution agreement. 56.1 ¶ 47. In 2010, after Mr. Schik read about the deferred prosecution agreement, he submitted a "voluntary disclosure to the IRS regarding his foreign accounts." 56.1 ¶ 51. That disclosure was rejected by the IRS "due to timeliness and/or completeness." 56.1 ¶ 52. Mr. Schik then "belatedly filed an FBAR for 2007, reporting [the] holdings in" the Accounts. 56.1 ¶ 54.

After Mr. Schik and the IRS agreed to extend the time to assess an FBAR penalty for the 2007 failure to disclose, the IRS assessed penalties totaling $8,822,806 against him for willful failure to comply with the FBAR filing requirements. 56.1 ¶ 58. After receiving the demand, Mr. Schik did not pay the penalty. 56.1 ¶¶ 59-60. The Government then brought this action.

## LEGAL STANDARD

### A.  *Summary Judgment*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 133 (2d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. The moving party bears the burden of demonstrating that no genuine factual dispute exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to the material facts, the Court is duty bound to draw all reasonable inferences in favor of the non-moving party, here, Mr. Schik. *See Anderson*, 477 U.S. at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" on summary judgment); s*ee also Scott*, 550 U.S. at 380 (the Court must view all facts in light most favorable to non-moving party).

### B.  *Burden and Standard of Proof*

Mr. Schik urges that the standard of proof applicable to this matter is one of clear and convincing evidence. Opp. at 8-9. The Government argues that the burden that would be

applicable in any other civil matter—proof by a preponderance of the evidence—governs.  Reply at 2-3.  As principal authority, Mr. Schik relies on an IRS Office of Chief Counsel Memo[2] from 2006 that discussed "the proper interpretation of the willful standard [in FBAR cases]."  Opp. at 8.  The IRS Memo states that the Service "expect[s] that a court will find the burden in civil FBAR cases to be that of providing 'clear and convincing evidence,' rather than merely a 'preponderance of the evidence.'"  Opp. at 8.  As a threshold matter, it bears noting that the IRS Memo is not binding legal authority; the IRS Memo reflects what the Service *expected* would be the standard applied by courts to civil FBAR cases.  In essence, it is a policy statement.

The expectation of the IRS was not borne out by courts around this country, which have uniformly held the Government to a preponderance standard in civil FBAR cases.  *See United States v. Demauro*, 483 F. Supp. 3d 68, 87 (D.N.H. 2020) (applying preponderance of the evidence standard to civil FBAR case); *United States v. De Forrest*, 463 F. Supp. 3d 1150, 1156 (D. Nev. 2020) (same); *United States v. Ott*, 441 F. Supp. 3d 521, 527 (E.D. Mich. 2020) (same); *United States v. McBride*, 908 F. Supp. 2d 1186, 1201 (D. Utah 2012) (same); *Bedrosian v. United States*, 2017 WL 3887520, at *1 (E.D. Pa. Sept. 5, 2017) (same).  Particularly instructive is a recent opinion from the United States District Court for the District of Connecticut.  In *United States v. Garrity*, the court concluded that the standard generally applicable to civil suits for money damages—preponderance of the evidence—applied in civil FBAR penalty cases.  304 F. Supp.3d 267, 270-71 (D. Conn. 2018).

As the *Garrity* court points out, the statute applicable to this action, 31 U.S.C. § 5321, is silent as to the applicable standard of proof.  *Id.* at 270.  The Supreme Court teaches that the

---

[2] Internal Revenue Service, Office of Chief Counsel Memorandum 200603026, Foreign Bank and Financial Accounts Report (FBAR) Penalty (January 20, 2006) (the "IRS Memo").

Court must therefore begin with the principle that "[i]n a typical civil suit for money damages, plaintiffs must prove their case by a preponderance of the evidence." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 (1983).  In *Huddleston*, the Supreme Court noted that application of a clear and convincing evidentiary standard in civil matters where Congress has not specified a standard has occurred only "where a particularly important individual interest[] or right[] [is] at stake." *Id.* at 389.  The *Garrity* court survey of the law concluded that, "[u]sing these principles, every court that has answered the question [presented here] . . . has held that the preponderance of the evidence standard governs suits by the government to recover civil FBAR penalties." *Garrity*, 304 F. Supp. 3d at 270.  The Court agrees that the Government bears the burden to prove by a preponderance of the evidence that it is entitled to judgment as a matter of law.  *See id.*; *Demauro*, 483 F. Supp. 3d at 87; *De Forrest*, 463 F. Supp. 3d at 1156; *Ott*, 441 F. Supp. 3d at 527.

## DISCUSSION

The United States seeks to assess a civil FBAR penalty against Mr. Schik pursuant to 31 U.S.C. § 5321(a)(5).  Am. Compl. ¶¶ 9, 49-52.  18 U.S.C. § 5321(a)(5)(C) states that a penalty may be assessed "[i]n the case of any person willfully violating, or willfully causing any violation of, any provision of section 5314."  The United States seeks to collect on the $8.8 million civil penalty assessed against Mr. Schik for his alleged willful failure to report "his financial interests in foreign financial accounts in calendar year 2007, as required by 31 U.S.C. § 5314 and its implementing regulations."  Am. Compl. ¶ 3.

To be found liable for a willful violation under 31 U.S.C. § 5321(a)(5), the United States must prove by a preponderance of the evidence that: (1) Mr. Schik is a United States citizen, (2) Mr. Schik had an interest in, or authority over a foreign financial account; (3) the account had a balance exceeding $10,000.00 at some point during the reporting period; and (4) Mr. Schik

willfully failed to disclose the account and file a FBAR.  31 U.S.C. §§ 5314, 5321(a)(5)(A); 31 C.F.R. §§ 1010.350(a) and (b).  There is no dispute with respect to the first three elements.  56.1 ¶¶ 1, 5-6; *see also* Opp. at 9 (arguing only the willfulness prong).  Mr. Schik also concedes that he did not timely file an FBAR for 2007.  56.1 ¶ 7.

The Parties vigorously dispute whether Mr. Schik's failure to file the 2007 FBAR was a *willful* violation of § 5321.

**I.      THERE ARE GENUINE ISSUES OF FACT REGARDING WHETHER MR. SCHIK WILLFULLY FAILED TO DISCLOSE HIS FOREIGN BANK ACCOUNT**

**A.      *What Conduct Constitutes a 'Willful' Violation***

Section 5321(a)(5) does not define "willful" or explain how to assess whether an individual acted willfully in his failure to comply with the reporting requirements imposed by Section 5314.  Mr. Schik propounds that "willful violations" for purposes of Section 5321(a)(5) liability must be the intentional disregard of a known legal duty.  Opp. at 9.  The Government urges the Court to read "willful" as including conduct that is "objectively reckless toward the relevant reporting requirements."  Mem. at 11.  The Court turns to the principles of interpretation that must guide its analysis.

The "starting point in statutory interpretation is the statute's plain meaning, if it has one." *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000).  The plain meaning of "willful" is not so clear.  Dictionary definitions of the word seem to point in different directions.  *Compare* "willful", Black's Law Dictionary (11th ed. 2019) ("A voluntary act becomes willful, in law, only when it involves . . . at least inexcusable carelessness"); *with* "willful", Merriam-Webster.com, https://www.merriam-webster.com/dictionary/willful (willful means "done deliberately").  The Supreme Court has noted that the plain meaning of "willful" is elusive because it is a "'word of many meanings whose construction is often dependent on the context in

8

which it appears.'" *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57 (2004) (quoting *Bryan v. United States*, 524 U.S. 184, 191 (1998)).

"Willful" takes a different meaning in the criminal law than it does in the civil context. *Safeco*, 551 U.S. at 57 (holding that "willful failure" in the civil context of the Fair Credit Reporting Act included reckless conduct."). In the criminal tax context, willful has been construed to mean the intentional violation of a known legal duty. *See, e.g.*, *United States v. Pomponio*, 429 U.S. 10, 12 (1976) (per curiam) (holding that "willfulness in [the falsifying tax returns] context means a voluntary, intentional violation of a known legal duty" requiring "bad faith or evil intent."); Opp. at 9-10. Mr. Schik essentially argues that a meaning akin to the criminal definition of "willful" should be applied to civil FBAR penalties. *See* Opp. at 9.

The Supreme Court has explained that "where willfulness is a statutory condition of civil liability" courts generally construe willful to include "not only knowing violations of a standard, but reckless ones as well." *Safeco*, 551 U.S. at 57 (collecting cases). The Second Circuit has held that, for purposes of a similar tax provision, "an individual's bad purpose or evil motive in failing to collect and pay the taxes properly plays no part in the civil definition of willfulness." *Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997) (citation, alteration, and quotation marks omitted). Thus, while the Second Circuit has not yet opined on the meaning of "willful" in the FBAR context, it has signaled that "willful" in the civil context is an action that requires no malicious intent, *i.e.*, a reading in line with a reckless standard. Every circuit court that has addressed this issue reads "willful" to include reckless conduct. *See United States v. Rum*, 995 F.3d 882, 889 (11th Cir. 2021) ("[W]e hold that willfulness in § 5321 includes reckless disregard of a known or obvious risk"); *United States v. Horowitz*, 978 F.3d 80, 88 (4th Cir. 2020) ("[W]e conclude that, for the purposes of applying § 5321(a)(5)'s civil penalty, a 'willful violation' of

9

the FBAR reporting requirement includes both knowing and reckless violations"); *Norman v. United States*, 942 F.3d 1111, 1115 (Fed. Cir. 2019) (same) *Bedrosian v. United States*, 912 F.3d 144, 152 (3d Cir. 2018) (same). The Court agrees with the decisions of almost every court, including those in this Circuit, that have considered the issue and now holds that a "willful violation" includes reckless violations for purposes of a civil FBAR penalty. *United States v. Gentges*, 531 F. Supp. 3d 731, 743 (S.D.N.Y. 2021); *United States v. Bernstein*, 486 F. Supp. 3d 639, 645-58 (E.D.N.Y. 2020); *Garrity*, 304 F. Supp. 3d at 273-74; *United States v. Kelley-Hunter*, 281 F. Supp. 3d 121, 124 (D.D.C. 2017).

B.  *Whether Mr. Schik's Conduct Was Willful*

On summary judgment, the Court is obligated to construe all facts and draw all possible inferences in favor of Mr. Schik as the non-moving party. *See Scott*, 550 U.S. at 380. On the record before it, and drawing all reasonable inferences in favor of Mr. Schik, the Court concludes that there are genuine issues of material fact regarding whether Mr. Schik's failure to file the 2007 FBAR was willful rather than merely negligent. Those issues should be resolved by a jury and not by the Court on summary judgment.

There is no dispute that Mr. Schik did not himself manage the Accounts located in Switzerland. 56.1 ¶¶ 14, 22-23. There also is no dispute that Mr. Schik did not prepare his 2007 tax returns himself. 56.1 ¶ 43. Further, there is no dispute that Mr. Schik—an individual with almost no formal education—was unaware of his obligation to disclose the account. 56.1 ¶¶ 62, 66. Moreover, it is undisputed that Mr. Schik's tax preparer did not ask him about accounts abroad. 56.1 ¶ 66. The facts, which are viewed in the light most favorable to Mr. Schik, also make clear that he did not withhold disclosure of the Accounts for any nefarious purpose. "In the civil context, 'recklessness' encompasses an objective standard—specifically, 'the civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the

10

face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Horowitz*, 978 F.3d at 89 (alteration omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, (1994)). However, the issue framed by the Government's motion is whether, as a matter of law, "the evidence is such that a reasonable jury *could* return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (emphasis added). The burden is on the Government, and the Court draws all inferences in favor of Mr. Schik. *Id*. at 255, *Adickes*, 398 U.S. at 157.

Mr. Schik firmly believes that he did not willfully violate the FBAR reporting requirements because he relied on his tax preparer. Opp. at 11 (describing his conduct as "accidental or unconscious"). He asserts that he was "unaware that he was required to report his foreign bank accounts." Opp. at 13. To be sure, other courts outside this Circuit have concluded that on the summary judgment record before them, the only permissible inference was that the defendant's failure was willful. *See, e.g. Kimble v. United States*, 141 Fed. Cl. 373 (Fed. Cl. 2018) (willful conduct found where "Plaintiff did not disclose the existence of the UBS account to her accountant," "Plaintiff never asked her accountant how to properly report foreign investment income," and "did not review her individual income tax returns for accuracy.") *aff'd* 991 F.3d 1238 (Fed. Cir. 2021) (not clear error to find willful conduct); *Horowitz*, 978 F.3d at 90 (affirming summary judgment where "[d]espite numerous red flags, [the plaintiffs] neither made a simple inquiry to their accountant nor gave even the minimal effort necessary to render meaningful their sworn declaration that their tax returns were accurate.").

On the record before it on the pending motion, however, the Court cannot conclude *as a matter of law* that the only inference to be drawn from the facts is that Mr. Schik's failure to file the FBAR form was willful. *See Anderson*, 477 U.S. at 255 ("The evidence of the nonmovant is

11

to be believed, and all justifiable inferences are to be drawn in his favor" on summary judgment); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (facts on summary judgment must be viewed "in the light most favorable to the non-moving party" and the Court should "resolve all factual ambiguities in its favor"); *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) ("In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."). Mr. Schik presents evidence from which a reasonable jury could conclude that he did not act willfully because he did not manage his Holocaust safety net, he did not know of the requirement to disclose those funds, his tax preparer never informed him of the requirement, he relied on his tax preparer in connection with the submission of his 2007 tax returns, and his tax preparer's software auto-filled key portions of the deficient filing. At least one Court has held that where the defendant "testified that he relied on his tax preparer's competence in preparing the return" it was "arguably not reckless for him to not 'bother' reading the FBAR instructions." *United States v. Flume* 2018 WL 4378161, at *9 (S.D. Tex. 2018). The *Flume* court denied summary judgment because it believed it "would be exceeding its summary judgment authority if it presumed that [the defendant] 'examined' his returns, and knew about the FBAR requirements[,] merely because he signed the returns under penalties of perjury." *Id.* at *7. Here, as in *Flume*, there is a genuine dispute here as to whether Mr. Schik's conduct is willful as a matter of law, rather than merely negligent. *Flume*, 2018 WL 4378161, at *3, *6; *cf Cheek v. United States*, 498 U.S. 192, 201-202 (1991) (good-faith belief that one is not violating the tax law, even if irrational or unreasonable, negates "willfulness" in criminal tax context).

When Congress included penalties for "willful violations" of Section 5321(a)(5), it explicitly delineated between failures to report that are and are not willful. Willfulness, therefore, must mean something more than mere negligence. The Government's suggested reading of the word—that willfulness should be found categorically even when an unsophisticated taxpayer did not know of an obligation to report and relied on a tax preparer—would abrogate that distinction. *See Lowe v. SEC*, 472 U.S. 181, 208 n.53 (1985) (a court "must give effect to every word that Congress used in the statute"); *see also United States v. Schwarzbaum*, 2020 WL 1316232, at *8 (S.D. Fl. Mar. 20, 2020) ("Imputing constructive knowledge of filing requirements to a taxpayer simply by virtue of having signed a tax return would render the distinction between a non-willful and willful violation in the FBAR context meaningless."); *Jones v. United States*, 2020 WL 4390390, at *9 (C.D. Cal. May 11, 2020) (in the FBAR context, "signing a tax return on its own cannot automatically make the taxpayer's violation 'willful' as that would collapse the willfulness standard to strict liability.").

At bottom, whether Mr. Schik's conduct was "willful," rather than merely negligent, is a question of fact. *United States v. Gormley*, 201 F.3d 290, 294 (4th Cir. 2000) (state of mind is question of fact); *Rykoff v. United States*, 40 F.3d 305, 307 (9th Cir. 1994) (same); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) (state of mind is question of fact to be determined by factfinder at trial); *United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012). The Court cannot conclude that Mr. Schik's failure to disclose his accounts was willful as a matter of law. The evidence, taken in the light most favorable to Mr. Schik, creates a genuine dispute of material fact. Accordingly, the Government is not entitled to judgment as a matter of law on the issue of willfulness.

## II. THIS CASE MUST ULTIMATELY BE REMANDED TO THE INTERNAL REVENUE SERVICE TO RECALCULATE THE PENALTY AMOUNT

A penalty amount calculated by the IRS may be reviewed to ensure that it is not arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A). The Government concedes that errors in the penalty assessment render the amount incorrect, and that its process was deficient. Mem. at 14 (arguing that the matter "should be remanded to the IRS for calculation of the correct penalty amount."). In particular, the Government "has been unable to identify the records supporting the revenue agent's conclusion as to the . . . balance [in the accounts needed for penalty calculation] as of December 31, 2007." Mem. at 15. "If the record before the agency does not support the agency action . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Citizens Against the Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) (it may be "an abuse of discretion to prevent an agency from acting to cure the very legal defects asserted by plaintiffs challenging federal action.").

Mr. Schik agrees that the calculation was arbitrary and capricious, Opp. at 14, but argues that remand for recalculation would mean the penalty would "violate the statute of limitations" and the assessment would "be time-barred," Opp. at 14-15.[3] Remand for recalculation of the penalty amount, however, would not be a new assessment of a penalty outside any statute of limitations. It would instead be a recalculation of the initial penalty based upon a finding of willfulness. *See United States v. Schwarzbaum*, __ F.4th __, 2022 U.S. App. LEXIS 2379, at *22-23 (11th Cir. Jan. 25, 2022) (no authority stands "for the proposition that, on remand from

---

[3] Mr. Schik does not argue that the penalty as initially assessed was outside the statute of limitations. *See* Opp. at 14-15.

14

judicial review under the APA, an agency could be time-barred from re-evaluating its original actions.").[4]

Because the Court has determined that it cannot grant summary judgment on the question of willfulness, this case must proceed to trial. The Court will remand this matter to the IRS for recalculation of the penalty amount should a jury conclude that Mr. Schik's actions were willful. *See Jones*, 2020 WL 2803353, at *8 ("Should willfulness be found at trial, the Court will remand the action to the IRS for recalculation.").

## CONCLUSION

For the reasons stated herein, the Motion for Summary Judgment by the United States is DENIED. On the record before it, drawing all inferences in favor of Mr. Schik as the non-moving party, the Court cannot conclude that Mr. Schik willfully failed to file the required FBAR in 2007.

The Court believes that the Parties in this case would benefit from mediation. By separate order the Court will refer the Parties to the Southern District of New York's Mediation Program. *See* Local Civil Rule 83.9(e)(3) (the "assigned District Judge . . . may determine that a case is appropriate for mediation and may order that case to mediation, with or without the consent of the parties.").

**SO ORDERED.**

**Date: March 8, 2022**
**New York, NY**

*Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**

---

[4] Mr. Schik argues that the penalty amount violates the Eighth Amendment prohibition on "excessive fines." U.S. Const. Amend. VIII; Opp. at 15. Because the penalty amount needs to be recalculated, a determination of whether the fine associated would be excessive for purposes of the Eighth Amendment would be premature. The Court notes, however, that there is at least some authority for the proposition that civil FBAR penalties do not violate the Excessive Fines Clause. *See Landa v. United States*, 153 Fed. Cl. 585, 599-601 (Fed. Cl. 2021); *United States v. Collins*, 2021 WL 456962, at *8-11 (W.D. Pa. Feb. 8, 2021); *Schwarzbaum*, 2020 WL 2526500, at *7.